**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: November 19, 2018
Date Decided: January 31, 2019

Andrew C. Durham, *pro se*
4805 Randolph Drive
Annandale, VA 22003

John G. Harris, Esquire
Berger Harris LLP
1105 N. Market Street, 11th Floor
Wilmington, DE 19801

Re: *Durham v. Grapetree, LLC*, Civil Action No. 2018-0174-SG

Dear Counsel:

This is the latest installment of persistent litigation among five siblings who had the misfortune to inherit property. That property is currently being held by an LLC. Four of the siblings are manager-members, and the fifth, Plaintiff Andrew C. Durham, is a member and *not* a manger. Before me is his suit to compel books and records under Section 18-305 of the Delaware Limited Liability Company Act, filed against Grapetree, LLC ("Grapetree"). Grapetree is owned by Andrew and his four siblings, James, Jeff, Dee, and Davis, Jr.[1] The LLC is registered in Delaware, and it has a sole asset: a rental property in St. Lucia known as "Les Chaudieres." Andrew has previously served books and records inquiries on Grapetree, and some of those

---

[1] I use first names for the five siblings to avoid confusion; no disrespect is intended.

inquiries culminated in litigation before this Court. In 2011, Grapetree settled a books and records case filed by Andrew and his brother, Davis, Jr.

In this litigation, Andrew appears *pro se*. The ability of a litigant to represent himself civilly is a fundamental right; exercise of that right, however, comes with responsibilities to understand and to follow court rules, and to not make frivolous arguments. Andrew appears to fundamentally misunderstand the purposes and limitations of a books and records action. He seeks documents as though he were entitled to plenary discovery—and beyond. He seeks to compel "explanations" and "statements" that are not records of Grapetree. To the extent he seeks documents related to a proper purpose, his demands are often overbroad. These reasons would support a dismissal of the action.[2] Nonetheless, Andrew has made some demands that are within the bounds of records subject to inspection under Section 18-305.[3] In the interest of justice, I proceed in this Letter Opinion to go through Andrew's demand, winnow the proper purposes and records necessary thereto, as stated by Andrew, from the chaff of improper purposes and demands, and identify the categories of documents to which he is entitled. I then address the LLC's request to shift fees.

---

[2] *See generally Cook v. Hewlett-Packard Co.*, 2014 WL 311111 (Del. Ch. Jan. 30, 2014) (concerning analogous Section 220 of the DGCL).

[3] 6 *Del. C.* § 18-305.

Andrew filed his Complaint on March 12, 2018. In it, he sought to compel Grapetree to produce numerous documents, including some that are not records of the LLC, and sought to compel Grapetree to "explain" or "show cause" for a number of its actions. Among the documents Andrew seeks are individuals' (at least one of whom is not a Grapetree member) tax returns; copies of text and email correspondence between Grapetree members and various non-parties; a list of all decisions made by the "Managing Members," with various additional information; a detailed accounting relating to three members; Grapetree's employment agreement with one individual; records for "Managing Member" pre-approvals for a variety of expenditures; three years' worth of guest records for Les Chaudieres; costs related to "acquiring four POAs and apostilles;" copies of checks cashed by Grapetree members; receipts, along with "proof all the items ended up at Les Chaudieres;" Grapetree's business plan; "explanations" of how weeks at Les Chaudieres are distributed to Grapetree's members; explanation of various expenses; explanation of various bills; explanation of Dee's activity on Grapetree's bank account;[4] and passwords for LLC-related email accounts.[5] The full statement of documents demanded is set out at Exhibits 1 and 2 to this Letter Opinion.

---

[4] *See* Compl., Ex. A.
[5] *Id.* Subex. A.

3

Andrew's stated purpose for the demand is "to better understand the reasons the business continues to be failing, whether there continues to be fraudulent bookkeeping, whether embezzlement and misappropriation continues by [other members], whether the assets of the LLC . . . are being properly administered or abused, whether corporate documents that protect the owners are in order . . . and to obtain information and compliance previously agreed to in the [settlement agreement] and other information available [for unstated reasons] under [Section 18-305]."[6]

On September 18, 2018, Andrew filed a Motion to Supplement the Pleadings; that is, he filed a motion seeking to augment his initial books and records request.

I note that, for purposes of legal analysis, a books and records demand served on an LLC under Section 18-305 functions in the same manner as a books and records demand served on a corporation under Section 220 of the Delaware General Corporation Law.[7]  Under Section 220, a plaintiff must establish by a preponderance of the evidence that, along with complying with the statutory formalities, she possesses a proper purpose for conducting the inspection.[8]  Likewise, Section 18-305 requires compliance with statutory formalities and requires a plaintiff to state a

---

[6] *Id.*

[7] 8 *Del. C.* § 220; *see also, e.g.*, *Sanders v. Ohmite Holds., LLC*, 17 A.3d 1186, 1193 (Del. Ch. 2011).

[8] *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 775 (Del. Ch. 2016) (citing *Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 144 (Del. 2012)).

4

"purpose reasonably related to the member's interest as a member of the limited liability company."[9]  The LLC member is entitled to obtain:

> (1) True and full information regarding the status of the business and financial condition of the limited liability company;
> (2) Promptly after becoming available, a copy of the limited liability company's federal, state and local income tax returns for each year;
> (3) A current list of the name and last known business, residence or mailing address of each member and manager;
> (4) A copy of any written limited liability company agreement and certificate of formation and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which the limited liability company agreement and any certificate and all amendments thereto have been executed;
> (5) True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and which each member has agreed to contribute in the future, and the date on which each became a member; and
> (6) Other information regarding the affairs of the limited liability company as is just and reasonable.[10]

As with a demand under Section 220, a books and records demand under Section 18-305 can be disruptive to the business affairs of the entity; for that reason, this Court must exercise its discretion so that "the interests of the [entity are] balanced with those of the inspecting [member]."[11]  Once a proper purpose is found, this balance is struck in the scope of production permitted: the Court must direct the entity to produce all records essential to the purpose, "but stop at what is

---

[9] 6 Del. C. § 18-305.
[10] *Id.*
[11] *KT4 Partners, LLC v. Palantir Techs., Inc.*, 2019 WL 347934, at *7 (Del. Jan. 29, 2019) (addressing Section 220).

5

sufficient."[12]    Section 18-305 allows "reasonable" modification of inspection rights,[13] but the LLC agreement here does not contain any such restriction.[14]

With these principles in mind, I turn to the books and demand in this case. As an initial matter, I must deny Andrew's motion to supplement his initial books and records request. A plaintiff seeking books and records must first afford the company the opportunity to avoid litigation by making a written demand and allowing the company to comply;[15] accordingly, she may not add new requests for documents, absent a demand, by pleading during the course of the litigation.[16]  Corporate stockholders or LLC members are always able to file additional books and records demands; however, each of those resulting legal actions is a summary litigation. To allow additional requests via amendment would hinder the summary nature of these actions, and could encourage litigation that could be avoided by a proper demand. Accordingly, Andrew's request to supplement his books and records request is denied. Andrew attached two books and records demands to his Complaint, his demand of November 23, 2017, and his demand of December 4, 2017. I will consider the records as requested in those demands.

---

[12] *Id.* at *9 (internal quotation omitted).
[13] § 18-305.
[14] *See* Grapetree's Trial Br., Ex. A.
[15] § 18-305.
[16] *See, e.g.*, *KT4 Partners, LLC v. Palantir Techs., Inc.*, 2018 WL 1023155 (Del. Ch. Feb. 22, 2018), *aff'd in part, rev'd in part on other grounds*, 2019 WL 347934 (Del. Jan. 29, 2019).

I now turn to the substance of Andrew's initial books and records demand, to the extent I understand it. The demand recited several purposes; I must determine which, if any, are proper. First, Andrew seeks documents to vindicate the terms of a settlement in an earlier action. If he believes settlement obligations persist but are unmet, he is free to bring an enforcement action, but may not use this summary proceeding to vindicate those rights. His other reasons, as explained in the course of this litigation, involve investigating wrongdoing on the part of the managers in support of a derivative action, and valuation of his interest. Those are proper purposes. Andrew's allegations of breach of duty by the managers, however, appear to be wholly conclusory.[17] I therefore examine the documents sought as relating to his purpose regarding the value of his asset, including "why the business continues to be failing."[18] That purpose requires records explicitly available under the statute; those "regarding the status of the business and the financial condition of the limited liability company."[19] I note that, per the Complaint, the LLC is near bankruptcy. It has a single asset, the rental property, Les Chaudieres. To the extent the documents demanded are necessary to Andrew's proper purpose, they must be produced. I

---

[17] Andrew has suggested in the pleadings that he has sufficient evidence to bring breach of fiduciary duty actions against certain managers, or to seek a receivership for the LLC. Nothing in this Letter Opinion should be read as prejudicial to his ability to so proceed.

[18] Compl., Ex. A.

[19] § 18-305.

examine each request in turn, as I understand them from the Demand of November 23, 2017.

1) **Tax returns of Dee and "Barry Evans."** These are not records of the LLC, nor are they necessary to the purpose. This request is denied.

2) **All correspondence among a number of named individuals.** These are not records of the LLC, nor are they necessary to the purpose. This request is denied.

3) **A "list" of all decisions made by the "Managing Members" in the last three years, whether in writing, by text, and/or by email.** This is a demand for the LLC to create a document, not a proper demand to inspect corporate records. In any event, it is overbroad. This request is denied.

4) **Create and provide an audited accounting "of all amounts due by or to Jeff, Davis and Dee."** This is not a request for a corporate record, and is denied.

5) **Provide Basil Kollias' employment agreement.** Andrew has failed to demonstrate that this document is necessary to a proper purpose, and the request is denied.

6) **Records concerning approval by the Managing Members of the following expenses: Jeff and Jim Poole's construction trip; all Best Buy purchases in which the aggregate of purchases is over $1,000 per**

8

month; new credit card line of $15,000; Dee's initial cash advance of $1,500 from the credit line; Dee's ongoing cash advances raising the credit line balance to -$3,960.54; [D]ee's landscaping purchases; each one of Dee's and Jeff's discounts to 25 separate friends and charities; roof repair receipts, estimates, quotes and warranty; purchases of 'artwork' from Aztec copies."  These documents are pertinent to understanding the operation and value of the LLC, which I have found to be Andrew's proper purpose.  To the extent there exist documents evincing Managers' Meetings at which these topics were discussed, and presentations made at the meetings and minutes of the meetings referencing them, they must be produced to Andrew.

7) **Documents showing the tenants of Les Chaudieres for the past three years, and rental amounts generated from these tenants**.  This request is granted, because it relates to the value of the LLC's asset.

8) **Records relating to obtaining of certain powers of attorney and apostilles.**  Andrew has failed to show that these records are related to a proper purpose, and the request is denied.

9) **All bills from "Basil Kollias and Michelle Desir" together with all emails and texts from Davis Jr. to those individuals.**  Andrew has failed

9

to show that these records relate to a proper purpose, and the request is denied.

10) **"[A]ll correspondence between the LLC and FOWP, Kidney Foundation, Westtown school, Brian Fahey, etc., etc."** Andrew has failed to show that these records relate to a proper purpose, and the request is denied.

11) **Copies of client checks cashed directly by Jeff and/or Dee.** This request is granted.

12) **All receipts for "pool purchases" and Bed Bath and Beyond receipts.** Andrew has failed to show that these records are neccesary to a proper purpose, and the request is denied.

13) **Grapetree's "business plan" for two upcoming years.** To the extent this is an existing corporate record, it should be produced.

14) **A copy of "Phillip Serra's December 2015" payment to the LLC, allegedly made directly to Jeff.** This is redundant of documents in demand #11, which I have granted. The demand also seeks correspondence between Grapetree and Serra regarding the payment, which is granted.

15) **"New" accounting of Jeff and Jim Poole's "December trip."** This does not seek an existing record of the LLC.

16) **Copies of all correspondence to and from "Longwood Rotary" regarding a donation from the LLC to that organization.** This request is granted.[20]

Andrew makes numerous further demands, including that the LLC create documents, "explanations," or "commentary."[21] These are not appropriate demands for corporate records, and they are denied.

In his December 4, 2017 demand, Andrew requested access to Grapetree's email account, as well as "login information and passwords to all email accounts used to conduct the LLC's business."[22] His stated purpose was the same as in his previous demand, "to better understand the reasons the business continues to be failing."[23] These are not appropriate demands for corporate records, and they are denied.

Grapetree, in anticipation of prevailing in this action, seeks fees under the LLC agreement, which (per Grapetree) calls for an award of fees to the prevailing party.[24] I have ordered certain books and records produced, but have denied the greater part of Andrew's requests, as unnecessary to a proper purpose or overbroad, or as not seeking existing documents. Grapetree argues that this litigation was, at least in part,

---

[20] These demands are listed in Exhibit A of the Complaint; additionally, they are attached as Exhibit 1 to this Opinion.
[21] Compl., Ex. A.
[22] Compl., Subex. A. The December 4, 2017 demand is also attached as Exhibit 2 to this Opinion.
[23] *Id.*
[24] Grapetree's Trial Br., at 25.

no more than Andrew's attempt cause distress to his sister, Dee, one of the managers of Grapetree. I note that the degree of animus among the members here is considerable, and must, to some extent, have formed an incentive for some of Andrew's more far-fetched demands in this litigation. I presume that this animus runs both ways.

This litigation has been unfortunately complicated and lengthy for a summary action. Mr. Durham filed a complaint styled "Complaint Motion to Compel Books and Records from Grapetree"—that is, this books-and-records action—on March 12, 2018. On April 30, Mr. Durham filed for a Motion for Default Judgment against Grapetree; on May 1, John G. Harris, Esquire entered his appearance on behalf of Grapetree. On June 14, 2018, Mr. Durham filed a letter seeking to supplement his original books and records demand. On July 17, 2018, Mr. Durham filed a letter seeking default judgment, on improper service and other procedural grounds. On July 19, 2018, Mr. Durham filed a Motion Requesting Voluntary Mediation. On July 20, Mr. Durham moved to disqualify Mr. Harris as Grapetree's Counsel, on the grounds that Mr. Harris would be a necessary witness at trial. In a July 23, 2018 teleconference, I ordered that Mr. Durham properly serve the Complaint on Grapetree, which service, prior to that time, had not been made. On July 30, Grapetree answered Mr. Durham's Motion to Disqualify. Also on July 30, 2018, I held a follow-up teleconference regarding the case status and ordered limited

discovery. On July 31, a letter from Mr. Durham was filed, accusing Mr. Harris of malfeasance in advance of the July 30 teleconference. On August 14, 2018, Mr. Durham filed an "Answer to Defendant's Opposition to Motion to Disqualify." On August 22, 2018, I heard telephonic oral argument on the Motion to Disqualify, which I denied in a bench ruling. The parties agreed to resolve this matter through a paper trial, and a schedule was set for trial briefs.

On September 5, 2018, Grapetree filed its trial brief. On September 18, 2018, Mr. Durham filed a Motion to Supplement the Pleadings, seeking additional books and records. On September 20, 2018, Mr. Durham filed an Answer to the Defendant's trial brief; on that same day, he filed a letter requesting a trial and requesting discovery. On October 4, 2018, I held a status teleconference, and the parties agreed to proceed on a paper record. On October 17, Mr. Durham filed a letter with a status update, informing the Court that "misappropriation appears to be ongoing" and reiterating books and records demands. On November 5, 2018, Grapetree filed a Memorandum of Points and Authorities. On November 19, 2018, Mr. Durham filed a "final submission," and the case was submitted on the papers.

This is a one-asset family LLC that is ill-equipped to respond to ongoing litigation from a *pro se* member, in which it must be represented. On the other hand, the Plaintiff here has prevailed to some extent, and had good will persisted among all parties—as unfortunately it does not—much expense and effort could have been

avoided.  If Grapetree, in light of my decision here, continues to seek fees, counsel should so inform me, and I will address that request.

In conclusion, the Plaintiff's books and records requests are granted in part and denied in part.  To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

# EXHIBIT 1

**ANDREW C. DURHAM, RLA, LEED AP**

7440 FOUNTAIN HEAD DRIVE
ANNANDALE, VA 22003 U.S.A.
TEL: 302-655-0200
E-MAIL: ACDASSOC@MSN.COM

LANDSCAPE ARCHITECTURE
SITE PLANNING
LEED DESIGN AND REVIEW
HORTICULTURE AND ARBORICULTURE

November 23, 2017

Via: Email and Priority Mail
RE: New Books and Records Demand for information pursuant to Delaware Code Sect 220
(Inspection of books and records.), Title 8, Chapter 1., General Corporation Law.

Attn: Dee/Jeff Durham
Grapetree LLC
c/o 901 Mt. Lebanon Rd.
Wilmington, DE 19803

**Proper Purpose:**
The 'books and records' demand filed against Grapetree LLC (the "LLC") in 2011 and
settled in 2012 (the "agreement") revealed extensive embezzlement by Jeff Durham and
serious misappropriation/misuse of assets by Dee Durham. Further, the two had colluded to
hide the missing money (totaling some $65,000 or more) in fraudulent financial statements
made to the other three owners. The crimes would have only been discovered by open access
to the LLC's records as provided under this state law.

The LLC refused to reply initially to that B&R demand. Vice Chancellor Laster allowed the
case to proceed compelling the LLC to respond (but he deferred, you'll all remember, the
derivative portions of the complaint that had to be tried separately later). Just days before the
scheduled hearing to determine whether the LLC's books would be opened forcibly by Court
order, the LLC settled out of court.

Numerous parts of the settlement agreement have been repeatedly breached; virtually every
month documents are posted late and many receipts and supporting documents are missing or
only provided upon new demands. Jeff and Dee Durham continue to control all of the
finances as well as compliance with the agreement. Many of the same problems which
precipitated the earlier B&R case filed at Chancery exist today despite the agreement:
violations of the LLC's Operating Agreement (the 'OA') limitations on spending,
misappropriation, outright theft of money, inequitable distributions to shareholders, missing
receipts, etc. The earlier embezzlement crimes and subsequent legal expenses nearly
bankrupted the LLC and left it struggling for existence in the years since.

Pursuant to the DE LLC Act, the purpose of this demand is to better understand the reasons
the business continues to be failing, whether there continues to be fraudulent bookkeeping,
whether embezzlement and misappropriation continues by Jeff and Dee Durham, whether the
assets of the LLC (rentals by the week) are being properly administered or abused, whether

corporate documents that protect the owners are in order (such as hold harmless agreements) and to obtain information and compliance previously agreed to in the agreement dated March 30, 2012 and other information available under the 'Inspection of books and records' statute. Additionally, the LLC has been negotiating for the last 9 months a long-term lease of its sole asset (the St. Lucia Villa) and plans to grant the lessee an option to buy; ensuring that the LLC's finances and management are in order is an important and timely task as is verifying the lease and purchase documents were properly formed according to the OA and agreements between the owners (without fraud, deceit, inequity, etc.) and to verify that the LLC will be prepared to turn the property over at lease inception.

The LLC has 5 days to respond under Delaware law or the matter will be filed at Chancery to compel the LLC to respond...as before:

NEW DEMAND FOR BOOKS AND RECORDS:

- Copies of Dee Durham's and Barry Evan's state and federal tax returns for 2014, 2015 and 2016 or the previous three completed years.

- All correspondence this year to date between Jeff and/or Dee Durham and Basil Kollias, Michelle Desir and Christy Collins/James Jones.

- All correspondence this year to date between Dee and/or Jeff Durham and Jack Harris.

- A list of all decisions made by the "Managing Members" the past three years whether in writing, text or verbally. For each decision made by text and/or email (etc.) provide copies. For each decision made "verbally" (by phone or in person), list the dates of those telephonic or in-person meetings, location and who attended.

- Provide an itemized, detailed accounting for all amounts due by or to Jeff, Davis and Dee Durham (**Exhibit A**, "A/P Detail appears to show Jeff and Dee are owed over $10,000; reconcile with **Exhibit B**, "Balance Sheet Detail", which shows very different amounts). Have the accounting audited by the LLC's accountants if necessary to clearly convey the loans, debts and personal spending reimbursements owed by the three shareholders.

- Provide Basil Kollias' employment agreement with the LLC per the DLRPC.

- Show complete email/text (etc.) records for MM pre-approvals for the following for the last three years:
— Jeff and Jim Poole's construction trip
— all Best Buy purchases in which the aggregate of purchases is over $1,000 per month
— new credit card line of $15,000

-- Dee's initial cash advance of $1,500 from the credit line

-- Dee's ongoing cash advances raising the credit line balance to -$3,960.54

— dee's landscaping purchases

-- each one of Dee's and Jeff's discounts to 25 separate friends and charities (**Exhibit C**)

— roof repairs receipts, estimates, quotes and warranty

-- purchases of "artwork" from Aztec copies

- for the past three years, provide a calendar/dated schedule of every occupant of the house and amounts paid. Specifically identify every shareholder's visit.

- complete costs including Michelle and Basil itemized time and all receipts for acquiring the four POAs and apostilles for Jeff, Dee, Davis, Jr., and Jim.

- Basil's proof of shipment and shipping receipts of the four notarized POA's to the States of Pennsylvania and Delaware.

- confirm the attached is a complete and current A/P statement (EXHIBIT A)

- all bills from Basil Kollias and Michelle Desir. If none are available, obtain estimates from the two parties.

- all emails and texts from Davis, Jr. and Jim to Basil Kollias and to Michelle Desir this year to date.

- confirm amounts paid to Davis, Jr. for Comcast utility services last three years. (EXHIBIT D), confirm loans to Davis, Jr. last three years. Identify all other loans and payments to Davis, Jr. last three years.

- all correspondence between the LLC and FOWP, Kidney Foundation, Westtown school, Brian Fahey, etc., etc. See EXHIBIT F: a total of 25 individuals and organizations are highlighted with an arrow. Provide all of the correspondence between the LLC and the list.

- copy of and reveal details for the client check cashed by Jeff for his 'construction' trip

- copies of all other client checks cashed directly by Jeff and/or Dee

- all Bed, Bath and Beyond receipts (and evidence all the items ended up at Les Chaudieres. -- Ditto pool equipment receipts and evidence they ended up at Les Chaudieres.

- provide the LLC's business plan leading up to and through the first two years of lease: anticipated income and expenses in a timeline, completion or major repairs (4 sections of roof, Paul's room, etc.)

- provide commentary on 1.) who will review and track the performance items in the lease, and 2.) how the annual weeks in the lease for owner visits are to be distributed to the shareholders.

(PREVIOUS UNANSWERED) DEMANDS FOR ADDITIONAL BOOKS AND RECORDS:

**Explain the extraordinary drop in income** for 2016: down 60% from last year. See attached.

**Explain and provide receipts for the following:**

-- Dee's spending of $250 at "DE Digital Video" and $312.84 at "Imprints of DE". [checks were bouncing in the LLC account while Dee made the purchases].

-- Dee's spending of $547.00 at Bed Bath & Beyond. [checks were bouncing in the LLC account while Dee made the purchases].

-- Dee's spending of $128.69 at "Super-J" a grocery store in St. Lucia. [checks were bouncing in the LLC account while Dee made the purchases

-- Dee's spending of $461.10 at a garden center in Pennsylvania: "SiteOne Supply". [checks were bouncing in the LLC account while Dee made the Pennsylvania landscape supply purchases.

-- Dee's spending entry of $290.00 at "Synchrony Bank" and with note: "Amazon, details to follow". [no details followed].

-- **Provide a copy of Philip Serra's December 2015 payment and explain in detail how the payment was handled.** It appears – against all rules and proper accounting procedures – Jeff Durham cashed one of this client's checks (or was paid in cash). He then used the cash to purchase plane tickets…and to hide the evidence of those purchases. He then failed to properly account for the cash or the expenses or the income. It appears our 2015 tax returns are misstated and fraudulent as a result.

**--Provide a copy of all correspondence to and from Phillip Serra regarding his December 2015 payment.**

There is still no detailed accounting of Jeff's and Jim Poole's December trip…just a series of "journal". **Provide a new accounting of the December trip where personal spending, false and hidden accounting and misuse of the LLC's debit card are subtracted out and Jeff made to reimburse the LLC. Use the retroactive, limited approvals granted by Jim and Davis to Jeff's spending in the new accounting.**

Provide evidence from Berger-Harris (a letter, an email…) stating unequivocally that Grapetree LLC owes the firm no more money. Despite assertions by Jeff, the firm is still listed as being owed $79,510. Prove that Jeff and Dee are not hiding an enormous, still-existing debt from the LLC.

Provide copies of all correspondence to and from "Longwood Rotary" regarding their recent Gala even at which "Dee Durham" is publicly credited for donating a [steeply discounted] week's stay at Les Chaudieres to her friends. Provide evidence that Dee Durham does NOT receive invitations, tax deductions or other benefits from her self-serving donations of Durham property to charity clubs of her choice.

8. **Explain in detail Jeff's submittal of a "bill" to the LLC for $3,006.54** for his December trip when the LLC's accounts were raided for cash by Jeff, materials were purchased with the LLC's debit card, meals and groceries were paid for by the LLC, and Jeff stole a client's payment to pay for his airfare, car rental and other personal living expenses:

| 12/31/2015 | Bill | DEC 2015 Trip | 12/31/2015 | 159 | 3,006.54 | 3,006.54 |

9. Confirm that the recent "loan(s)" from Dee are not "loans" made to the LLC: they are used to reduce the balance she OWES the LLC as follows. **Question: Is it correct that Dee cannot get these funds returned to her because she is repaying loans made to her FROM the LLC and not giving the LLC loans?**

| 05/25/2015 Bill | | Pier I Imports | | S/H Loan:Dee Durham Accounts Payable | -191.89 | -3,686.98 |
| 05/25/2015 Bill | | Pier I Imports | Account ending in .... 7177 Dee Durham | S/H Loan:Dee Durham Accounts Payable | -308.11 | -3,995.09 |
| 06/14/2015 Bill | | Pier I Imports | | S/H Loan:Dee Durham Accounts Payable | -95.95 | -4,091.04 |
| 06/14/2015 Bill | | Pier I Imports | Account ending in ... 7177 Dee Durham | S/H Loan:Dee Durham Accounts Payable | -154.05 | -4,245.09 |
| 06/14/2015 Bill | | Sleepy's | Pillows (Dee Durham #417480) | S/H Loan:Dee Durham Accounts Payable | -350.00 | -4,595.09 |
| 08/05/2015 Bill | | Pier I Imports | Account ending in .... 7177 Dee Durham | S/H Loan:Dee Durham Accounts Payable | -92.43 | -4,687.52 |
| 08/05/2015 Bill | | Sleepy's | Pillows (Dee Durham #417480) | S/H Loan:Dee Durham Accounts Payable | -200.00 | -4,887.52 |
| 08/05/2015 Bill | | Pier I Imports | | S/H Loan:Dee Durham Accounts Payable | -57.57 | -4,945.09 |
| 08/25/2015 Check | POS | Staples | Need receipt | S/H Loan:Dee Durham PNC Checking-7652 | -201.92 | -5,147.01 |
| 09/10/2015 Journal Entry | 177 | | ATM Deposit, Wilmington | S/H Loan:Dee Durham -Split- | 1,100.00 | -4,047.01 |
| 09/29/2015 Bill | | Pier I Imports | Account ending in .... 7177 Dee Durham | S/H Loan:Dee Durham Accounts Payable | -61.10 | -4,108.11 |
| 09/29/2015 Bill | | Sleepy's | Pillows (Dee Durham #417480) | S/H Loan:Dee Durham Accounts Payable | -199.86 | -4,307.97 |
| 09/29/2015 Bill | | Pier I Imports | | S/H Loan:Dee Durham Accounts Payable | -38.05 | -4,346.02 |
| 03/22/2016 Deposit | | Durham, Dee | DD- Loan to Grapetree | S/H Loan:Dee Durham PNC Checking-7652 | 1,000.00 | -3,346.02 |
| 04/01/2016 Deposit | | Durham, Dee | Loan from Dee | S/H Loan:Dee Durham PNC Checking-7652 | 4,000.00 | 653.98 |
| Total for Dee Durham | | | | | | |
| Total for S/H Loan | | | | | | $653.98 |
| TOTAL | | | | | | $653.98 |
| | | | | | | $653.98 |

Tuesday, Jun 07, 2016 09:57:18 AM PDT GMT-4 - Cash Basis

This snapshot above covering a random period 5/25/15 – 4/1/16 shows an astonishing $1,950.93 in personal spending that Dee is charging to the LLC – $750 for "pillows"(!) and more from Pier 1 Imports…when the Durham LLC is in desperate need of money to pay its bills, checks are bouncing and repairs desperately needed for its real property.

This is against a backdrop of years of Dee Durham's personal abuse of the LLC's debit card and checks to line her own pockets. **Show cause why Dee should still have any checking privileges with the LLC or how the LLC intends to stop this destructive, wasteful activity.**

**Per State Law, please respond in full within 5 (five) days.**

These formal demands for books and records will become public record if this matter must be filed in Chancery in order to compel full and accurate responses. Information the LLC refuses to provide now voluntarily can also be sought in discovery or be ordered to be provided by the court as necessary.

Sincerely,

_Andy Durham_

Andy Durham, a very concerned Owner in good standing.

November 24, 2017\

Date

# EXHIBIT 2

**ANDREW C. DURHAM, RLA, LEED AP**

7440 FOUNTAIN HEAD DRIVE
ANNANDALE, VA 22003 U.S.A.
TEL: 302-655-0200
E-MAIL: ACDASSOC@MSN.COM

LANDSCAPE ARCHITECTURE
SITE PLANNING
LEED DESIGN AND REVIEW
HORTICULTURE AND ARBORICULTURE

December 4, 2017

Via: Email and Priority Mail
RE: New Books and Records Demand for information pursuant to Delaware Code Sect 220 (Inspection of books and records.), Title 8, Chapter 1., General Corporation Law.

Attn: Dee/Jeff Durham
Grapetree LLC
c/o 901 Mt. Lebanon Rd.
Wilmington, DE 19803

**Proper Purpose:**
The 'books and records' demand filed against Grapetree LLC (the "LLC") in 2011 and settled in 2012 (the "agreement") revealed extensive embezzlement by Jeff Durham and serious misappropriation/misuse of assets by Dee Durham. Further, the two had colluded to hide the missing money (totaling some $65,000 or more) in fraudulent financial statements made to the other three owners. The crimes would have only been discovered by open access to the LLC's records as provided under this state law.

The LLC refused to reply initially to that B&R demand. Vice Chancellor Laster allowed the case to proceed compelling the LLC to respond (but he deferred, you'll all remember, the derivative portions of the complaint that had to be tried separately later). Just days before the scheduled hearing to determine whether the LLC's books would be opened forcibly by Court order, the LLC settled out of court.

Numerous parts of the settlement agreement have been repeatedly breached; virtually every month documents are posted late and many receipts and supporting documents are missing or only provided upon new demands. Jeff and Dee Durham continue to control all of the finances as well as compliance with the agreement. Many of the same problems which precipitated the earlier B&R case filed at Chancery exist today despite the agreement: violations of the LLC's Operating Agreement (the 'OA') limitations on spending, misappropriation, outright theft of money, inequitable distributions to shareholders, missing receipts, etc. The earlier embezzlement crimes and subsequent legal expenses nearly bankrupted the LLC and left it struggling for existence in the years since.

Pursuant to the DE LLC Act, the purpose of this demand is to better understand the reasons the business continues to be failing, whether there continues to be fraudulent bookkeeping, whether embezzlement and misappropriation continues by Jeff and Dee Durham, whether the assets of the LLC (rentals by the week) are being properly administered or abused, whether

corporate documents that protect the owners are in order (such as hold harmless agreements) and to obtain information and compliance previously agreed to in the agreement dated March 30, 2012 and other information available under the 'Inspection of books and records' statute. Additionally, the LLC has been negotiating for the last 9 months a long-term lease of its sole asset (the St. Lucia Villa) and plans to grant the lessee an option to buy; ensuring that the LLC's finances and management are in order is an important and timely task as is verifying the lease and purchase documents were properly formed according to the OA and agreements between the owners (without fraud, deceit, inequity, etc.) and to verify that the LLC will be prepared to turn the property over at lease inception.

The LLC has 5 days to respond under Delaware law or the matter will be filed at Chancery to compel the LLC to respond…as before:

NEW DEMAND FOR BOOKS AND RECORDS:

Open the LLC's email account to all the Owners so that all the owners can see the business of the LLC occur.

Provide the login information and passwords to all email accounts used to conduct the LLC's business.

**Per State Law, please respond in full within 5 (five) days.**

These formal demands for books and records will become public record if this matter must be filed in Chancery in order to compel full and accurate responses. Information the LLC refuses to provide now voluntarily can also be sought in discovery or be ordered to be provided by the court as necessary.

Sincerely,

_Andy Durham_ _____         December 4, 2017

Andy Durham, a very concerned Owner in good standing.         Date